1

2

3

4

5

6

7

8                  **UNITED STATES DISTRICT COURT**

9                 **CENTRAL DISTRICT OF CALIFORNIA**

10

11  KCI NEWPORT, INC., a          )   CV 15-07694 RSWL (PJWx)
    California corporation; and )
12  KASSIR IMPORT-EXPORT CO.,     )
    INC., a California            )   **ORDER Re: APPLICATION**
13  corporation,                  )   **FOR DEFAULT JUDGMENT BY**
                                  )   **COURT AS TO SMOKE WORLD,**
14              Plaintiffs,        )   **INC., MIGUEL RUIZ, DBA**
         v.                       )   **EAST SIDE SMOKE SHOP, CC**
15                                )   **INTERNATIONAL TRADING,**
    SMOKE TOKES, LLC, a           )   **INC, AND WESTSIDE**
16  California limited            )   **TRADING LLC** [50].
    liability company; SMOKE      )
17  WORLD, INC., a California      )
    corporation; CC               )
18  INTERNATIONAL TRADING,        )
    INC., a California            )
19  corporation; MIGUEL RUIZ,     )
    an individual and doing       )
20  business as EAST SIDE SMOKE )
    SHOP; WESTSIDE TRADING LLC, )
21  a California limited          )
    liability company; and DOES )
22  1 through 50,                 )
                                  )
23              Defendants.        )
    _____)

24       Currently before the Court is Plaintiff KCI

25  Newport, Inc.'s ("KCI") and Kassir Import-Export Co.,

26  Inc.'s ("Kassir") (collectively "Plaintiffs")

27  Application for Default Judgment [50].  In their

28  Application, Plaintiffs seek damages, injunctive relief,

                              1

and attorneys' fees.  The present application arises
from a trademark infringement action against Defendants.
For the reasons set forth below, the Court **GRANTS**
Plaintiffs' Application [50].

**I.    BACKGROUND**

**A.    <u>Factual Background</u>**

Plaintiffs are California corporations with their
principal places of business in Commerce, California.
First Amended Complaint ("FAC") ¶ 1, ECF No. 13.  Kassir
is a wholesaler and distributor of general merchandise
including smoking supplies, operating its business since
1995.  <u>Id.</u> at ¶ 12.

Defendants CC International Trading, Inc. ("CC
International Trading"), Smoke Tokes, LLC ("Smoke
Tokes"), and Smoke World, Inc. ("Smoke World") are
California corporations with their principal places of
business in Los Angeles, California.  <u>Id.</u> at ¶¶ 2-4.
Defendant Miguel Ruiz is an individual residing in, and
doing business as East Side Smoke Shop in Los Angeles,
California.  <u>Id.</u> at ¶ 5.  Defendant Westside Trading LLC
("Westside Trading") is a California limited liability
company with its principle place of business in Los
Angeles, California.  <u>Id.</u> at ¶ 6.

Kassir has a registered trademark with the United
States Patent and Trademark Office ("USPTO") for a mark
featuring the words "NEWPORT ZERO" (Registration No.
4,492,372), including graphic elements such as a
distinctive red flame and blue rectangle, along with

2

1  other distinctive graphic elements of its packaging such
2  as "a design consisting of a tube with flints spaced
3  aroudn the top in different levels (the "Mark"). <u>Id.</u> at
4  ¶¶ 14-16; <u>see</u> FAC Ex. C.  The Mark covers "cans
5  containing butane gas." <u>Id.</u>

6      KCI was formed on March 6, 2013. <u>Id.</u> at 17.
7  Kassir has, since its conception, distributed butane
8  lighter gas under the Mark, as well as under the
9  unregistered word mark "NEWPORT ZERO" (the "Trade
10 Name").

11     In their FAC, Plaintiffs allege that Defendants
12 have been importing and/or distributing glass pipes
13 designed for smoking marijuana and marijuana derived
14 combustibles that bear graphics closely similar to their
15 Mark, except that the word "Newport" in the graphic is
16 replaced with the word "Newpipe" ("Infringing Pipes").
17 <u>Id.</u> at ¶ 18.  Plaintiffs believe that the Infringing
18 Pipes are being imported from China by Defendant CC
19 International Trading Inc., and are being sold in stores
20 and marketed, advertised and/or sold online by the
21 remaining Defendants listed in this action. <u>Id.</u> at ¶
22 19.  Plaintiffs allege that consumers within this
23 judicial district have in fact purchased Defendants'
24 Infringing Pipes. <u>Id.</u>  Plaintiffs have not consented to
25 Defendants' use of the Mark or the Trade Name on the
26 Infringing Pipes. <u>Id.</u> at ¶ 22.
27 //
28 //

**B.**   **Procedural Background**

On September 30, 2015, Plaintiffs filed their Complaint [1] for injunctive and monetary relief against Defendants, alleging violations of the Lanham Act, as well as common law unfair competition and unfair competition pursuant to the California Business and Professions Code.  On October 14, 2015, Plaintiffs' Complaint was served on Defendants [9, 10, 11, 12].  On October 22, 2015, Plaintiffs filed their First Amended Complaint ("FAC") [13].  On November 6, 2015, the FAC was served on Defendants [16, 17, 18, 19, 20].

On November 10, 2015, Plaintiffs requested that the clerk of court enter default against Defendants CC International Trading, Miguel Ruiz, and Smoke World [23].  On November 12, 2015, the clerk entered default against Smoke World, Miguel Ruiz, and CC International Trading [24].  On November 20, 2015, Plaintiff requested that the clerk of court enter default against Westside Trading [25].  On November 23, 2015, the clerk entered default against Westside Trading [26].

On November 25, 2015, Plaintiffs and Smoke Tokes entered into a stipulation to allow Plaintiffs to amend their First Amended Complaint, correcting some minor issues that Smoke Tokes raised in a conference of counsel [27].  On December 2, 2015, Plaintiffs filed their Second Amended Complaint ("SAC") [29].  On December 17, 2015, Plaintiffs requested that the clerk of court enter default against Defendant Smoke Tokes

[30].  On December 17, 2015, Plaintiffs filed a motion
withdrawing their request that the clerk enter default
against Smoke Tokes [31].  On December 21, 2015, Smoke
Tokes filed their Answer to Plaintiffs' SAC [32].

On December 21, 2015, Smoke Tokes filed a
Counterclaim against Counter-Defendants and Third Party
Defendants KCI, Kassir, and Keen Private Label Limited
("Keen") [33].  On December 23, 2015, this Court ordered
Smoke Tokes' Counterclaim and Third-Party Complaint [33]
to be stricken for failure to comply with the Court's
Local Rules, General Orders, and/or Case Management
Order [37].  On December 23, 2015, Smoke Tokes again
filed a Counterclaim against Plaintiffs/Counter-
Defendants KCI and Kassir . [39].  On December 23, 2015,
Smoke Tokes also filed a Third Party Complaint against
Third-Party Defendant Keen [40].  On January 11, 2016,
Plaintiffs/Counter-Defendants filed an Answer to Smoke
Tokes' Counterclaim [44].  On January 11, 2016,
Defendant/Counterclaimant Smoke Tokes filed a
Stipulation to Clarify its Counterclaim [45].

On February 19, 2016, Plaintiffs filed a Motion for
Default Judgment against Defendants [50].  On April 7,
2015, Plaintiffs filed a Stipulation to Dismiss all
claims against Smoke Tokes, and all counter-claims
against counter-Defendants KCI and Kassir. [57].  On
April 8, 2016, this Court granted Plaintiffs'
Stipulation [58], dismissing all claims against Smoke
Tokes, and all counterclaims by Smoke Tokes against

5

1  Plaintiffs.  On May 6, 2016, this Court granted the
2  parties' stipulation to dismiss all claims against
3  Defendant Miguel Ruiz, doing business as Eastside Smoke
4  Shop [60].

5      Plaintiffs now bring the instant Motion for Default
6  Judgment [50] against the remaining Defendants in this
7  action, Smoke World, Westside Trading, and CC
8  International Trading.

9                  **II.   DISCUSSION**
10 **A.   Legal Standard**

11     Default judgment is within the discretion of the
12 district court.  <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092
13 (9th Cir. 1980); <u>see</u> Fed. R. Civ. P. 55.  A party
14 applying to the Court for default judgment must satisfy
15 both procedural and substantive requirements.

16     Procedurally, the requirements set forth in Federal
17 Rules of Civil Procedure Rules 55 and 56, and Local Rule
18 55-1 must be met.  <u>See</u> <u>Vogel v. Rite Aid Corp.</u>, 992 F.
19 Supp. 2d 998, 1006 (C.D. Cal 2014).  Local Rule 55-1
20 provides: "When an application is made to the Court for
21 a default judgment, the application shall be accompanied
22 by a declaration in compliance with Fed. R. Civ. P.
23 55(b)(1) and/or (2) and include the following: (a) When
24 and against what party the default was entered; (b) The
25 identification of the pleading to which default was
26 entered; (c) Whether the defaulting party is an infant
27 or incompetent person, and if so, whether that person is
28                        6

1 | represented by a general guardian, committee,
2 | conservator or other representative; (d) That the
3 | Service Members Civil Relief Act, 50 U.S.C. § 521, does
4 | not apply; and (e) That notice has been served on the
5 | defaulting party, if required by Federal Rule of Civil
6 | Procedure 55(b)(2)."  L.R. 55-1.

7 |     Substantively, the Ninth Circuit has directed that
8 | courts consider the following factors, referred to as
9 | the Eitel factors in deciding whether to enter default
10 | judgment: "(1) the possibility of prejudice to
11 | plaintiff, (2) the merits of plaintiff's substantive
12 | claim, (3) the sufficiency of the complaint, (4) the sum
13 | of money at stake in the action, (5) the possibility of
14 | a dispute concerning the material facts, (6) whether
15 | defendant's default was the product of excusable
16 | neglect, and (7) the strong public policy favoring
17 | decisions on the merits."  See Vogel, 992 F. Supp. 2d at
18 | 1005; see also Eitel v. McCool, 782 F.2d 1470, 1471071
19 | (9th Cir. 1986).  Additionally, "[w]hen entry of
20 | judgment is sought against a party who has failed to
21 | plead or otherwise defend , a district court has an
22 | affirmative duty to look into its jurisdiction over both
23 | the subject matter and the parties."  In re Tuli, 172
24 | F.3d 707, 712 (9th Cir. 1999).

25 |     In analyzing these factors, the Court may base its
26 | judgment entirely upon the affidavits submitted by the
27 | parties.  Davis v. Fendler, 650 F.2d 1154, 1161 (9th

28

1  Cir. 1981).  If the Court determines that the defendant

2  is in default, "'the factual allegations of the

3  complaint, other than those relating to damages, are

4  taken as true.'"  <u>Televideo Sys., Inc. v. Heidenthal</u>,

5  826 F.2d 915, 917-918 (9th Cir. 1987) (quoting <u>Geddes v.</u>

6  <u>United Fin. Group</u>, 559 F.2d 557, 560 (9th Cir. 1977)).

7  Additionally, "[w]hen entry of judgment is sought

8  against a party who has failed to plead or otherwise

9  defend, a district court has an affirmative duty to look

10 into its jurisdiction over both the subject matter and

11 the parties." <u>In re Tuli</u>, 172 F.3d 707, 712 (9th Cir.

12 1999).

13 **B.  <u>Analysis</u>**

14        1.  <u>Application for Default Judgment</u>

15        Plaintiffs seeks entry of default judgment against

16 Defendants Smoke World, CC International Trading, and

17 Westside Trading for failure to respond or otherwise

18 defend themselves in this matter.  <u>See generally</u> Appl.,

19 ECF No. 50.  For the reasons set forth below, the Court

20 **GRANTS** Plaintiffs' Application, and in doing so, **GRANTS**

21 Plaintiffs' request for damages, in part, injunctive

22 relief, and attorneys' fees.

23            a.  *Jurisdiction and Service of Process are*

24                *Proper*

25        In considering whether to enter default judgment

26 against a party for failing to plead or otherwise defend

27 itself in an action, a district court must first

28                              8

determine whether it has jurisdiction over the subject matter and the parties to the case.  <u>In re Tuli</u>, 173 F.3d 707, 712 (9th Cir. 1999).

Generally, a defect in personal jurisdiction is a defense that must be asserted or waived by a party.  <u>Id.</u> (citing Fed. R. Civ. P. 12(h)(1)).  However, when a court is considering whether to enter default judgment, the court may dismiss the action *sua sponte* for lack of personal jurisdiction, for a "judgment entered without personal jurisdiction over the parties is void."  <u>Id.</u> This Court should find that service of process was proper, and the Court has jurisdiction over the parties and the subject matter in this action.

i.  <em>Personal jurisdiction</em>

Due process requires that a defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (internal quotations marks omitted).  Depending on the nature and scope of the defendant's contacts with the forum, jurisdiction may be general or specific to a cause of action.  <u>Roth v. Garcia Marquez</u>, 942 F.2d 617, 620 (9th Cir. 1991).  When a defendant's contacts with the forum state are "substantial" or "continuous and systematic," general jurisdiction may be exercised over that defendant for any cause of action, even if it is

9

unrelated to the defendant's activities with the forum
state.   Schwarzeneggar v. Fred Martin Motor Co., 374
F.3d 797, 801-02 (9th Cir. 2004); Data Disc, Inc. v.
Sys. Tech. Assocs., 557 F.2d 1280, 1287 (9th Cir. 1977).
"A court may exercise specific jurisdiction where the
suit 'arises out of' or is related to the defendant's
contacts with the forum and the defendant 'purposefully
avails itself of the privilege of conducting activities
within the forum State, thus invoking the benefits and
protections of its laws.'" Tuazon v. R.J. Reynolds
Tobacco Co., 433 F.3d 1163, 1169 (9th Cir. 2006) (citing
Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475
(1985)).

Defendants CC International Trading and Smoke World
are California corporations with their principal places
of business in Los Angeles, California.   FAC ¶¶ 2, 4.
Defendant Westside Trading is a California limited
liability company with its principal place of business
in Los Angeles, California.   Id. at ¶ 3.   This Court
thus finds it has general personal jurisdiction over
Defendants, as Defendants' contacts with the forum state
are sufficient to approximate physical presence.   FAC ¶
11; See Bancroft & Master, Inc. v. Augusta Nat'l Inc.,
223 F.3d 1082, 1986 (9thCir. 2000).   Alternatively, this
Court finds it has specific personal jurisdiction over
Defendants, as the present suit arises out of
Defendants' contacts with the forum state, specifically,

the sale of the Infringing Pipes in this judicial
district.   <u>Burger King Corp.</u>, 471 U.S. at 475.

### ii.   *Subject matter jurisdiction*

This Court finds it has subject matter jurisdiction
over the matter, as Plaintiffs' claims for trademark
infringement under 15 U.S.C. § 1114 and false
designation of origin under 15 U.S.C. § 1125(a) arise
under the Lanham Act.   This Court has pendent
jurisdiction over Plaintiffs' common law and California
unfair competition claims.   Furthermore, under 28 U.S.C.
§ 1338(a), this Court "shall have original jurisdiction
of any civil action arising under any Act of Congress
relating to ... trademarks."   28 U.S.C. § 1338(a).   This
Court thus has original jurisdiction over this matter as
the Court has jurisdiction over "any civil action
asserting a claim of unfair competition when joined with
a substantial and related claim under the . . .
trademark laws."   28 U.S.C. § 1338(b).

### iii.   *Service of Process*

This Court finds Plaintiffs have proffered the
requisite Proofs of Service [16, 17, 18, 19, 20] showing
the Defendants against whom default judgment is sought
were properly served with the Summons and Complaint.
Plaintiffs note that although Defendants have not
appeared in this action, Plaintiffs have served each of
them with this Application pursuant to Local Rule 55-2.
Declaration of Robert F. Helfing ("Helfing Decl.") ¶ 10,

ECF No. 51.   Nonetheless, as Defendants have not appeared in this action, Plaintiffs are not required to serve the present Application on Defendants.   See Fed. R. Civ. P. 55(b)(2) ("If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.").   This Court finds service of process is complete and proper.

    b.  *Plaintiffs have Satisfied the Procedural Requirements for Default Judgment*

  This Court finds Plaintiffs have met all of the procedural requirements for entry of default judgment. Plaintiffs' Application includes the identity of the parties that default was entered against, and when default was entered against them.   Helfing Decl. ¶¶ 2, 6, 7; Appl. 3:23-5:13.   Furthermore, Plaintiff's application identifies the pleading to which default was entered, the First Amended Complaint.[1]   As Defendants are business entities, Defendants are hence neither

---

[1]After filing their FAC, Plaintiffs subsequently filed a Second Amended Complaint on December 2, 2015, pursuant to a stipulation with now dismissed Defendant Smoke Tokes [27, 28]. Plaintiffs note that they did not serve the SAC on the Defendants against whom default had already been entered and against whom this Application for Default Judgment is sought.   Plaintiffs note that the present Application refers only to the allegations contained in the First Amended Complaint that was the governing and operative pleading at the time that default was entered against Defendants.   Finally, Plaintiffs note that Smoke Tokes has responded to the SAC, and Plaintiffs do not seek default judgment against Smoke Tokes.   Helfing Decl. p. 2, fn 1.

1   minors, nor incompetents, nor on military service or
2   otherwise exempt under the Servicemembers Civil Relief
3   Act. Helfing Decl. ¶ 8.  Additionally, default judgment
4   is entered against Defendants because Plaintiffs have
5   sufficiently satisfied the substantive requirements for
6   entry of default judgment.

7           c.   *Plaintiffs have Satisfied the Substantive*
8                *Requirements for Default Judgment*
9                *i.  Risk of prejudice to Plaintiffs.*

10       The first <u>Eitel</u> factor "considers whether plaintiff
11  will suffer prejudice if default judgment is not
12  entered."  <u>Tate v. Molina</u>, 2015 U.S. Dist. LEXIS 3607
13  (C.D. Cal. Jan. 9, 2015).

14       This Court finds Plaintiffs would be prejudiced if
15  default judgment was not entered.  As Defendants have
16  failed to respond to the FAC, and have not otherwise
17  appeared or participated in these proceedings,
18  Plaintiffs would have no other means of recovery if the
19  Court declined to enter default judgment.  <u>See</u> <u>Phillip</u>
20  <u>Morris USA, Inc. v. Castworld Prods., Inc.</u>, 219 F.R.D.
21  494, 499 (C.D. Cal. 2003) (prejudice found where
22  Plaintiffs could not otherwise recover damages).
23  Further, Plaintiffs would likely continue to suffer
24  future harm, specifically lost sales and diminished
25  goodwill, if Defendants were not prevented through
26  injunctive measures from further misuse of the
27  Infringing Pipes.  This Court finds the first <u>Eitel</u>

28                          13

factor weighs in favor of entry of default judgment.

> ii. *The merits of Plaintiffs' substantive claims and sufficiency of the Complaint.*

The second and third <u>Eitel</u> factors consider the merits of Plaintiffs' substantive claims and the sufficiency of the complaint.  "Under an [<u>Eitel</u>] analysis, [these factors] are often analyzed together." <u>Tate</u>, 2015 U.S. Dist. LEXIS 3607 at *5 (quoting <u>Dr. JKL Ltd. v. HPC IT Educ. Ctr.</u>, 749 F.Supp.2d 1038, 1048 (N.D. Cal. 2010)).  "These two factors require a plaintiff to 'state a claim on which the [plaintiff] may recover."  <u>Id.</u> (quoting <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388 (9th Cir. 1978)).  The second and third <u>Eitel</u> factors favor default judgment because Plaintiffs have adequately pled their four claims.  <u>See</u> <u>PepsiCo. Inc. v. California Security Cans</u>, 238 F.Supp.2d 1172, 1175 (C.D. Cal. 2002) (these factors "require that a plaintiff state a claim on which the [plaintiff] may recover")(internal citations omitted).

> 1. Plaintiffs have asserted a meritorious claim for Federal Trademark Infringement.

Plaintiffs' first claim against Defendants alleges infringement of a registered trademark, in violation of 15 U.S.C. § 1114.  "To prove a claim of trademark infringement, a plaintiff must show: (1) that it has a

14

1   valid, protectable trademark, and (2) that defendant's

2   use of the mark is likely to cause confusion." <u>Kythera</u>

3   <u>Biopharmaceuticals, Inc. v. Lithera, Inc.</u>, 998 F.Supp.2d

4   890, 898 (C.D. Cal. Feb. 20, 2014) (citing <u>Applied Info.</u>

5   <u>Scis. Corp. v. eBay, Inc.</u>, 511 F.3d 966, 969 (9th Cir.

6   2007)).  Whether the use is likely to cause confusion

7   turns on "whether a reasonably prudent consumer in the

8   marketplace is likely to be confused as to the origin of

9   the goods" bearing the mark.  <u>Id.</u> at 901.

                        A.   Protectability

11      The first element is comprised of two sub-parts:

12  the mark's protectability and Plaintiffs' ownership of

13  the mark.  <u>So. Ca. Darts Ass'n v. Zaffina</u>, 762 F.3d.

14  921, 929 (9th Cir. 2014).  Whether a mark is protectable

15  depends on its degree of "distinctiveness."  <u>Id.</u>  There

16  are five traditional categories of distinctiveness: (1)

17  generic, (2) descriptive, (3) suggestive, (4) arbitrary,

18  or (5) fanciful.  <u>Id.</u> (citing <u>Two Pesos, Inc. v. Taco</u>

19  <u>Cabana, Inc.</u>, 505 U.S. 763, 768 (1992).  Descriptive

20  marks, such as Plaintiffs' Mark here, become protectable

21  if they acquire a "secondary meaning," by becoming

22  distinctive "as used on or in connection with the

23  applicant's goods in commerce."  <u>Id.</u>; 15 U.S.C. §

24  1052(f).  Whether a secondary meaning exists requires

25  the consideration of several factors: (1) whether

26  consumers associate the product with the trademark

27  owner, (2) the extent of advertisement by the trademark

28                            15

owner, (3) the length of time of use by the trademark
owner, and (4) the owner's exclusive use of the
trademark.  <u>Japan Telecom v. Japan Telecom</u>, 287 F.3d
866, 873 (9th Cir. 2002).

Here, this Court finds Plaintiffs' Mark is valid
and protectable as Plaintiffs have sufficiently alleged
ownership of a valid mark.  <u>See</u> FAC ¶ 16, Ex. C.  In
accordance with 15 U.S.C. § 1057(b), the registration
provided is prima facie evidence of the ownership and
validity of the Mark.  Further, since March 2013,
Plaintiff KCI, under license from Plaintiff Kassir, has
"expended substantial time, money and resources
marketing, advertising and promoting the butane lighter
gas that it sells" under the Mark.  FAC ¶ 17.
Plaintiffs have not consented to Defendants' use of the
Mark, or its correlating Trade Name, on Defendants'
Infringing Pipes.  <u>Id.</u> at ¶ 22.  Based on the analysis
of the factors above, this Court finds that Plaintiff's
Mark has a secondary meaning and is thus protectable.

B.   Likelihood of Confusion

In regards to the second element, Plaintiffs must
show that Defendants' infringing use would likely cause
consumer confusion.  <u>So. Ca. Darts Ass'n</u>, 762 F.3d at
929.  Generally, courts apply a "likelihood of
confusion" test that asks whether the defendant's use of
the plaintiff's trademark is "likely to cause confusion
or to cause mistake, or to deceive as to the

16

affiliation, connection, or association" of the two products. <u>Mattel, Inc. v. Walking Mountain Prods.</u>, 353 F.3d 792, 806-07 (9th Cir. 2003).

The factors assessed in determining a "likelihood of confusion" ("Sleekcraft factors") are: (1) the strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degrees of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. <u>AMF Inc. v. Sleekcraft Boats</u>, 599 F.2d 341, 348-49 (9th Cir. 1979), <u>abrogated in part on other grounds by Mattel Inc. v. Walking Mountain Prods.</u>, 353 F.3d 792, 810 n. 19 (9th Cir. 2003). While courts analyze each of the eight factors, "[t]he test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them." <u>Surfvivor Media, Inc. v. Survivor Prods.</u>, 406 F.3d 625, 631 (9th Cir. 2005). The importance of any one factor will vary case by case, and a court may reach a conclusion of confusion by only considering a subset of the factors. <u>Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.</u>, 174 F.3d 1036, 1054 (9th Cir. 1999).

Here, the Court finds Plaintiffs have made a strong showing with respect to five of the eight <u>Sleekcraft</u> factors, and thus Plaintiffs have established a

17

"likelihood of confusion" supporting a meritorious claim for trademark infringement.  Regarding the first factor, Plaintiffs show their Mark is strong.  Plaintiffs have continually used the Mark since its USPTO registration in March of 2013, and have neither abandoned it nor shown intention to abandon it.  FAC ¶ 16.  Plaintiffs have advertised and promoted their products under their Mark, developing a reputation in the smoking industry since 2013.  <u>Id.</u> at ¶¶ 17, 28.

Regarding the second factor, the Court finds Plaintiffs have shown proximity of the goods at issue here.  Plaintiffs are both California corporations.  <u>Id.</u> at ¶ 1.  Kassir is a wholesaler and distributor of merchandise including smoking supplies.  <u>Id.</u> at ¶ 12. KCI has distributed butane lighter gas under the Mark and Trade Name since its formation in March, 2013.  <u>Id.</u> at ¶ 17.  Defendants are also distributors in the California smoking supplies industry.  <u>Id.</u> at ¶ 19. Defendants sell smoking products in stores, as well as market, advertise, and/or sell these products online. <u>Id.</u>

Regarding the third factor, the Court finds that although the marks are not identical, they are deceptively similar.  Defendants have been importing and/or distributing glass pipes designed for smoking marijuana that bear graphics very similar to the Mark, the only minor difference being that the word "Newport"

18

is replaced with the word "Newpipe." <u>Compare</u>
Declaration of Michael Mottesheard ("Mottesheard Decl.")
Exs. B, C <u>with</u> FAC Ex. A. Defendants' Infringing Pipes
display the same design as Plaintiffs' Mark: an
identical red flame arising out of a blue vertical
rectangle with white font. <u>See</u> <u>id.</u> Defendants'
Infringing Pipes also contain the "design consisting of
a tube with flints spaced around the top in different
levels." <u>Id.</u> Plaintiffs' Mark states in white font:
"Newport, Extra Purified Butane Lighter Gas," while
Defendants' Pipes state, in similar white font:
"Newpipe, Extra Purified Butane Gas." <u>Id.</u>

Regarding the fourth and seventh <u>Sleekcraft</u>
factors, Plaintiffs allege that actual confusion has
occurred and it was Defendants' intention to create such
confusion. Plaintiffs allege "that consumers within
this judicial district have in fact purchased
Defendants' Infringing Pipes," and that "Defendants are
importing and distributing the Infringing Pipes with
knowledge of Plaintiffs' trademarks." <u>FAC</u> ¶¶ 20, 21.
Plaintiffs allege Defendants "make such use with the
intention to capitalize upon the goodwill established by
Plaintiffs in those designations of origin." <u>Id.</u>

This Court finds Plaintiffs have made a strong
showing of five of the eight <u>Sleekcraft</u> factors, and
accordingly have asserted a meritorious claim for
federal trademark infringement.

2. Plaintiffs have asserted meritorious claims for False Designation of Origin, Common Law Unfair Competition, and Unfair Competition under California Business & Professions Code § 17200.

The elements to establish the claims of false designation of origin, unfair competition, and trademark infringement are "identical." New West Corp. v. NYM Co., 595 F.2d 1194, 1201 (9th Cir. 1979). "[T]he courts have uniformly held that common law and statutory trademark infringement are merely specific aspects of unfair competition," and thus the claims may appropriately be analyzed together. Kythera, 998 F.Supp.2d at 897 (citing Hokto Kinoko Co. v. Concord Farms, Inc., 810 F.Supp.2d 1013, 1031 (C.D. Cal. 2011)); see also Grey v. Campbell Soup Co., 650 F.Supp. 1166, 1173 (C.D. Cal. 1986) ("The tests for infringement of a federally registered mark under § 32(1), 15 U.S.C. § 1114(1), infringement of a common law trademark, unfair competition under § 43(a), 15 U.S.C. § 1125(a), and common law unfair competition involving trademarks are the same.") Furthermore, the Ninth Circuit "has consistently held that state common law claims of unfair competition . . . are 'substantially congruent' to claims made under the Lanham Act." Cleary v. News

1  <u>Corp.</u>, 30 F.3d 1255, 1262–63 (9th Cir.1994) (citing
2  <u>Academy of Motion Picture Arts & Scis. v. Creative House</u>
3  <u>Promotions, Inc.</u>, 944 F.2d 1446, 1457 (9th Cir. 1991)).
4     Thus, as this Court finds Plaintiffs have asserted
5  a meritorious claim for federal trademark infringement,
6  this Court similarly finds Plaintiffs are likely to
7  succeed on the merits of their false designation of
8  origin claim under the Lanham Act (second claim for
9  relief), their common law unfair competition claim
10 (third claim for relief), and their California unfair
11 competition claim (fourth claim for relief).
12    As such, the Court finds Plaintiffs have plausibly
13 pled each claim for relief, and thus the second and
14 third <u>Eitel</u> factors favor default judgment.
15              *iii.    The sum of money at stake in the*
16                      *action.*
17    "Under the fourth <u>Eitel</u> factor, 'the court must
18 consider the amount of money at stake in relation to the
19 seriousness of Defendant's conduct.'"  <u>Tate</u>, 2015 U.S.
20 Dist. LEXIS 3607 at *10 (quoting <u>PepsiCo</u>, 238 F.Supp.2d
21 at 1176.
22    Plaintiffs request that the Court award $100,000.00
23 in damages, "whether as an exercise of the Court's
24 discretion under the Lanham Act or as an award of
25 exemplary damages," which Plaintiffs allege equates to
26 $25,000.00 against each Defendant individually  Appl.
27 13:11-14.  Plaintiffs' also seek a permanent injunction
28                           21

against Defendants, prohibiting Defendants from any further unauthorized use of the infringing marks.  Id. at 3:19-21; FAC ¶ 5.

Section 1117(c) gives trademark owners the right to seek statutory damages in lieu of actual damages, ranging from $1,000.00 to $200,000.00 per trademark.  15 U.S.C. § 1117(c).  If trademark infringement is willful, trademark owners can recover statutory damages of as much as $2,000,000.00 for each trademark infringed.  Id. "An allegation of willful trademark infringement is deemed true when the defendant defaults." Sennheiser Electric Corp. v. Eichler, No. 12-cv-10809-MMM-PLAx, 2013 WL 3811775, at * 5 (C.D. Cal. July 19, 2013); see Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003) (noting that defendants' failure to answer an allegation of willful importation of counterfeit cigarettes constitutes an admission of the allegations in the complaint); see also Tiffany (NJ) Inc. v. Luban, 282 F.Supp.2d 123, 124 (S.D.N.Y. 2003) ("By virtue of the default, the [defendants'] infringement is deemed willful . . .").

Plaintiffs allege Defendants' infringement was "knowing, deliberate, willful, [and] fraudulent."  FAC ¶ 29.  The statutory damages that Plaintiffs seek are thus within the allowable range set by Congress.  Since the district court has "wide discretion in determining the amount of statutory damages to be awarded," the amount

22

1  of money requested does not weigh against the entry of
2  default judgment.  See L.A. News. Serv. v. Reuters
3  Television Int'l, Ltd., 149 F.3d 987, 996 (9th Cir.
4  1998).

5      Further, injunctive relief is an appropriate remedy
6  in a trademark infringement action, and thus this too
7  weighs in favor of granting Plaintiffs' application for
8  default judgment.  Sennheiser Electric Corp., 2013 WL
9  3811775, at *5; see also PepsiCo, 238 F.Supp.2d at 1176
10 (finding that plaintiff's prayer for injunctive relief
11 to protect against continued infringement weighed in
12 favor of entering a default judgment).

13     Finally, Plaintiffs seek $22,940.00 in attorneys'
14 fees pursuant to 15 U.S.C. § 1117(a) and Local Rule 55-
15 3.  Section 1117(a) authorizes a plaintiff to recover
16 attorneys' fees in exceptional cases.  See Lindy Pen Co.
17 v. Bic Pen Corp., 982 F.2d 1400, 1409 (9th Cir. 1993)
18 ("[G]enerally a trademark case is exceptional for
19 purposes of an award of attorneys' fees when the
20 infringement is malicious, fraudulent, deliberate or
21 willful.").  The Court finds that all of these amounts
22 are appropriate, and thus this factor favors the entry
23 of default judgment against Defendants.

24              iv. *The possibility of a dispute concerning*
25                  *the material facts.*

26     This Court finds that it is not clear there would
27 be any genuine dispute of material fact in the present

28                              23

case, as Defendants have not answered Plaintiffs' FAC or otherwise participated in this litigation. "Upon entry of default, the well-pleaded allegations in the complaint are taken as true, except those relating to damages." <u>Tate</u>, 2015 U.S. Dist. LEXIS 3607 at *12 (citing <u>TeleVideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917-918 (9th Cir. 1987)). "In addition, '[t]he district court is not required to make detailed findings of fact.'" <u>Id.</u> (citing <u>Fair Housing of Marin v. Combs</u>, 285 F.3d 899, 908 (9th Cir. 2002)). In <u>Tate</u>, the district court found: "Since defendant never answered or otherwise appeared in this action, it is unclear whether there would be any genuine dispute of material facts." <u>Id.</u> As in <u>Tate</u>, this Court finds no impediment to entry of default judgment against Defendants.

> *v.   Whether Defendants' default was the*
> *product of excusable neglect.*

"Excusable neglect is an equitable concept that takes account of factors such as 'prejudice . . . ., the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" <u>Tate</u>, 2015 U.S. Dist. LEXIS 3607 at *12 (quoting <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership</u>, 507 U.S. 380, 395 (1993)). As Defendants have not responded to Plaintiffs' FAC or the present Application, or

otherwise appeared in this action, there is no evidence before this Court that Defendants' default is the product of excusable neglect.  Furthermore, Defendant Smoke World contacted Plaintiffs' counsel after having received the Complaint, at which time Plaintiffs' counsel informed Smoke World that they would need to respond to the Complaint.  Helfing Decl. ¶ 4.  Smoke World nonetheless has not responded to the FAC or otherwise appeared in this action.

     Such failure to respond and/or appear favors entry of default judgment against Defendants.  See U.S. v. Waterbabies, LLC, 2010 WL 289075 at *2 (N.D. Cal. Jan. 15, 2010) (finding no "excusable neglect" where the defaulting party had been served and was aware of the lawsuit, but failed to respond in any manner); ACS Recovery Services, Inc. v. Kaplan, 2010 WL 144816 at *7 (N.D. Cal. Jan. 11, 2010) (finding no excusable neglect where defendant was properly served with the summons and complaint and had the opportunity to oppose the request for entry of default and failed to do so).  There is no indication that Defendants' default resulted from "excusable neglect."  Furthermore, as to Smoke World, it appears that entry of default resulted from willful disobedience.  This Court thus finds the sixth Eitel factor favors entry of default judgment.

//

//

1
2

> vi. *The strong public policy favoring decisions on the merits.*

Although there is a strong policy underlying the Federal Rules of Civil Procedure, which favors decisions on the merits "whenever reasonably possible," <u>Tate</u>, 2015 U.S. Dist. LEXIS 3607 at *13 (quoting <u>Eitel</u>, 782 F.2d at 1427), "'this preference, standing alone, is not dispositive.'" <u>Id.</u> (quoting <u>Kloepping v. Fireman's Fund</u>, 1996 U.S. Dist. LEXIS 1786 (N.D. Cal. 1996)). In deciding to grant default judgment, the <u>Tate</u> court noted: "Defendant's failure to answer the Complaint makes a decision on the merits impractical, if not impossible." <u>Id.</u> (citing <u>PepsiCo</u>, 238 F.Supp.2d at 1177). "Under Fed. R. Civ. P. 55(b), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." <u>Id.</u>

In the present case, Defendants have similarly made it impractical to decide the matter on the merits. In fact, no adjudication of the substantive claims can occur because Defendants have not appeared in the action. Because all <u>Eitel</u> factors weigh in favor of default judgment, this Court **GRANTS** Plaintiff's Application [50], and accordingly permanently enjoins Defendants from further infringing Plaintiff's trademark.

//
//

26

1     4. <u>Plaintiffs' Recovery</u>

2        a. *Statutory Damages*

3     In determining the appropriate amount of statutory

4 damages to award, a court should "consider the

5 defendant's profits, as well as saved expenses, the

6 plaintiff's lost revenues, and the defendant's state of

7 mind." <u>Rolex Watch U.S.A., Inc. v. Zeotec Diamonds,</u>

8 <u>Inc.</u>, No. 02-cv-01089-GAF-VBKx, 2003 WL 23705746, at *4

9 (C.D. Cal. Mar.7, 2003) (quoting <u>Louis Vuitton Malletier</u>

10 <u>and Oakley, Inc. v. Veit</u>, 211 F.Supp.2d 567, 584

11 (E.D.Pa. 2002)). The resulting statutory damages award

12 should be "low enough to bear some rational relationship

13 to the amount of damages incurred . . . but substantial

14 enough to deter similarly situated businesses from

15 engaging in similar conduct in the future." <u>Id.</u> at *5.

16     "A court has wide discretion to determine the

17 amount of statutory damages between the statutory maxima

18 and minima." <u>Microsoft Corp. v. Coppola</u>, No. 06-cv-

19 06701-WHA, 2007 WL 1520964, at *4 (N.D. Cal. May 24,

20 2007) (citing <u>Harris v. Emus Records Corp.</u>, 734 F.2d

21 1329, 1335 (9th Cir. 1984)). However, "[a] court is

22 less likely to award significant statutory damages,

23 especially maximum damages, if plaintiff fails to

24 substantiate or delineate the basis for the relief

25 sought." <u>Sennheiser</u>, 2013 WL 3811775 at *7; See <u>Coach,</u>

26 <u>Inc. v. Am. Fashion Gift</u>, No. 12-cv-07647-MWF-RZx, 2013

27 WL 950938, at *2 (C.D. Cal. Mar. 12, 2013) (awarding

28                              27

plaintiffs $10,000, instead of a requested $100,000, in statutory damages based on "the paucity of supporting evidence" where "it [was] not clear whether Defendants sold one or one million infringing purses").

Here, Plaintiffs' seek statutory damages in the amount of $25,000.00 against each Defendant individually, for a total of $100,000.00.  Appl. 13:1-14.  Plaintiffs' present Application, however, is seeking default judgment against three remaining defendants, specifically Smoke World, CC International Trading, and Westside Trading, as Miguel Ruiz d/b/a East Side Smoke Shop has since been dismissed from the action [59].  Therefore, this Court finds an award of $75,000.00 is appropriate.  This Court notes that Plaintiffs provided sparse evidence as to Defendants' profits from the infringement.  However, this Court finds, as Plaintiffs note, that Defendants' failure to appear or participate in this action has made it difficult, if not impossible, for Plaintiffs to determine the scope, breadth and volume of Defendants' distribution and sales of the Infringing Pipes.  Accordingly, Defendants have little evidence to support a focused calculation of damages.

However, Plaintiffs do proffer evidence of the valuation of the Infringing Pipes in the Smoke World and Westside Trading stores.  See Mottesheard Decl. Exs. B, C.  The Infringing Pipes were sold in these stores for

1  $292.00 and $267.50, respectively.  Id.  Plaintiffs
2  provide no further evidence with respect to Defendants'
3  confirmed sales or other quantification of importing
4  activity or sales onsite.  However, given Plaintiffs'
5  allegation of willfulness and the need for deterrence,
6  the Court awards $75,000.00 in statutory damages,
7  $25,000.00 against each Defendant for its respective
8  role in the importing, sale, and/or promotion of the
9  Infringing Pipes.
10              b.  Injunctive Relief
11      Under the Lanham Act, the Court has the power to
12  grant injunctions according to the rules of equity, and
13  on such terms as the court deems reasonable, to prevent
14  the violation of a mark holder's rights.  Truong Giang
15  Corp v. Twinstar Teac Corp., No. 06-cv-03594-JSW, 2007
16  WL 1545173, at *19 (N.D. Cal. May 29, 2007); see also 15
17  U.S.C. § 1116(a).  A plaintiff is not entitled to an
18  injunction as a matter of course, but where a mark
19  holder demonstrates ongoing infringement of its marks,
20  an injunction is appropriate.  Truong, 2007 WL 1545173
21  at *19.  "Injunctive relief is the remedy of choice for
22  trademark infringement and unfair competition cases,
23  since there is no adequate remedy at law for the injury
24  caused by a defendant's continuing infringement."
25  Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175,
26  1180 (9th Cir. 1988).  Here, as Plaintiffs have
27  sufficiently pled willful trademark infringement, the
28                              29

Court exercises its discretion to **GRANT** Plaintiffs' request for entry of a permanent injunction, so as to prevent Defendants from further unauthorized use of the Mark.

     *c.   Attorneys' Fees*

    Plaintiffs request attorneys' fees in the amount of $22,940.00, pursuant to 15 U.S.C. § 1117(a) and Local Rule 55-3.  Appl. 14:24-26.  Upon review of the Helfing Declaration, the Court **GRANTS** this request.  Given the Court's award of $75,000.00 in statutory damages, and pursuant to Rule 55-3, the Court awards Plaintiffs' attorneys' fees as requested.

### III.   CONCLUSION

    This Court **GRANTS** Plaintiffs' Application for Default Judgment [50].  Additionally, this Court **GRANTS** Plaintiff's request for entry of a permanent injunction against Defendants.  This Court hereby awards Plaintiffs $75,000.00 in statutory damages against Defendants, $25,000.00 to be owed by each Defendant.  The Court awards $22,940.00 in attorneys' fees to Plaintiffs, to be paid in equal parts by each Defendant.  Plaintiffs are awarded a sum total of $97,940.00.


DATED: May 17, 2016          s/ RONALD S.W. LEW
                                        **Honorable Ronald S.W. Lew**
                                        Senior U.S. District Judge